896 F.2d 545
 15 Fed.R.Serv.3d 925
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
James CORCORAN, Plaintiff-Appellant,
and
Security Software of New Jersey, Inc.; Security Software of
Marlton, Inc., Plaintiffs,
v.
INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant-Appellee.
James CORCORAN, Plaintiff-Appellant,
and
Peter F. Faltings; Security Software of New Jersey, Inc.;
Security Software of Marlton, Inc., Plaintiffs,
v.
INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant-Appellee.
Edward A. McCONWELL; Clayton E. Dickey, Plaintiffs-Appellants,
and
Peter F. Faltings; Security Software of New Jersey, Inc.;
Security Software of Marlton, Inc.; James
Corcoran, Plaintiffs,
v.
INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant-Appellee.
 Nos. 88-2101 and 88-2102
 United States Court of Appeals, Fourth Circuit.
 Argued: Dec. 5, 1988.
Decided: Jan. 30, 1990.
Rehearing and Rehearing In Banc Denied March 13, 1990.
 
 Kenneth C. Bass, III (John S. Buckley, Venable, Baetjer & Howard, on brief); Harvey B. Cohen (R. Scott Caulkins, Cohen, Gettings, Alper & Dunham, on brief), for appellants.
 Paul C. Saunders (Richard W. Clary, Brian S. Fraser, Thomas M. Finnegan, Cravath, Swaine & Moore; Haynie S. Trotter, McGuire, Woods, Battle & Boothe, on brief), for appellee.
 Before DONALD RUSSELL, WIDENER and K.K. HALL, Circuit Judges.
 PER CURIAM:
 
 
 1
 This case presents a consolidated appeal by plaintiffs-appellants James Corcoran and his attorneys, Edward McConwell and Clayton Dickey, against whom sanctions totalling $57,581.19 were assessed by the district court. These sanctions resulted from Corcoran's irreconcilably inconsistent statements made in a deposition and contemporaneous affidavit. For the reasons set forth below, we affirm the imposition of sanctions but remand the cause to the district court for an amendment of the amount of the assessment consistent with this opinion.
 
 I.
 
 2
 In October 1986, plaintiffs Security Software of New Jersey, Inc. and Security Software of Marlton, Inc. (both franchisees of Entre Computer Center; hereafter "Security Software"), a retailer of personal computers, Peter Faltings, and James Corcoran[1] filed a lawsuit against International Business Machines Corporation (hereafter "IBM") alleging breach of contract, tortious interference with contract, and conspiracy. The plaintiffs contended, inter alia, that IBM supplied an inadequate number of computers and wrongfully terminated them as a dealer of IBM products. On May 29, 1987, the jury returned a verdict in favor of IBM.
 
 
 3
 The motion for sanctions at issue on appeal here stems from an affidavit filed by Corcoran, an officer and owner of a fifty percent share of Security Software, in connection with plaintiffs' opposition to a motion for summary judgment filed by IBM. Included as a supporting document was an unsworn and unsigned Corcoran affidavit with Corcoran's name typed on the signature line next to an "/S/", suggesting the existence of a sworn copy. Subsequently, while taking Corcoran's deposition, IBM's counsel received a copy of the plaintiffs' opposition. At that time, Corcoran admitted that he did not write the affidavit, had not signed it, and that he had been unable to read the telecopied draft he had received in its entirety.
 
 
 4
 Following Corcoran's deposition, IBM served plaintiffs' counsel by hand with the Reply Memorandum in Support of its Motion for Summary Judgment. In the reply, IBM pointed out the inconsistencies to be found between Corcoran's affidavit and deposition testimony. Despite such notice, plaintiffs' counsel filed an executed version of the original affidavit immediately before the district court heard oral argument on the motion for summary judgment.
 
 
 5
 The court granted IBM's motion with regard to several of plaintiffs' causes of action. Thereafter, the plaintiffs filed a motion to modify the order for partial summary judgment, again relying on the Corcoran affidavit. At that time the district court noted the apparent inconsistencies to be found between Corcoran's affidavit and deposition, yet set the cause for trial, where a verdict in favor of IBM was rendered. IBM then filed a Motion for Sanctions for Filing a False Affidavit. Plaintiffs opposed the motion on the grounds that the affidavit was not false and that while Corcoran's deposition testimony may be confusing, it was consistent with his affidavit. The district court, however, found several discrepancies in the following passages. Corcoran was asked in his deposition:
 
 
 6
 Q. Do you know how many dealers IBM had as of November 1984?
 
 
 7
 A. No.
 
 
 8
 Q. Do you know approximately how many dealers IBM had as of November 1984?
 
 
 9
 A. I may have had some idea at the time. I don't think I have now.
 
 Corcoran's affidavit asserted that:
 
 10
 By November 1984, I was aware that IBM had approximately 2,000 dealerships throughout the United States.
 
 The affidavit continued:
 
 11
 Had I known then (August 8, 1984) or learned in the next few months that IBM did not intend to supply us with enough product to meet out [sic] stores' needs we would have sold both of them.
 
 The deposition stated:
 
 12
 Q. I simply want to know whether you know as a fact sufficient to permit you to state it as a fact under oath that IBM had no intention either of approving you as a direct dealer or of supplying you products sufficient to meet your needs?
 
 
 13
 A. No. I could not state that as a fact.
 
 
 14
 Again, in conflict with the deposition, the affidavit stated:
 
 
 15
 I had no information until after November 7, 1985, that IBM knew when Malcoun made that statement that it was shipping units to Entre in quantities sufficient to provide the Pinebrook store and, subsequently the Marlton store, with only approximately 10 units per store and that Entre was receiving a disproportionately low volume of products in comparison with others.
 
 The deposition continued:
 
 16
 Q. So then it is correct, is it not, that you don't know whether or not IBM shipped computer system units to Entre in volumes that permitted Entre to ship only 10 system units per store to its franchisees in any period of time?
 
 
 17
 A. It is a belief that I have, but I am not myself in possession of nearly enough knowledge to say that is absolutely true.
 
 
 18
 Q. You have never seen any information that leads you to that belief?
 
 
 19
 A. No, I have not.
 
 
 20
 * * *
 
 
 21
 * * *
 
 
 22
 Q. Do you have any reason to believe that Entre received computer products from IBM in disproportionately low volumes as compared to other franchisors or dealers?
 
 
 23
 A. I have an opinion about that. I am not sure if I have any proof, again.
 
 
 24
 Q. I just want to know whether you have any facts.
 
 
 25
 A. I don't have any facts. I just have a belief.
 
 
 26
 Q. You don't have any facts?
 
 
 27
 A. No.
 
 Finally, the affidavit stated:
 
 28
 Mr. Baker told us [on November 29, 1984] that IBM had not yet made its decision as to our direct purchase request.
 
 
 29
 At deposition Corcoran addressed this issue as follows:
 
 
 30
 Q. Did he tell you during the meeting on November 29, 1984, that IBM had not yet decided on your application to become a direct purchaser?
 
 
 31
 A. He may have said it that way.
 
 
 32
 Q. Did he?
 
 
 33
 A. I don't think I could say today exactly how he said it.
 
 
 34
 Q. You wouldn't swear one way or the other what he said?
 
 
 35
 A. No.
 
 
 36
 Based on such conflict, the district court held that Corcoran's affidavit had been filed in bad faith. Accordingly, sanctions totaling $57,581.19 were levied against Corcoran and his attorneys pursuant to Rules 56(g) and 11 of the Federal Rules of Civil Procedure and the inherent power of the court. See Alyeska Pipeline Service v. Wilderness Soc., 421 U.S. 240, 258-59 (1975). The district court reached this figure by awarding IBM what it considered to be reasonable attorney's fees. This award included $30,293.75 for the preparation by counsel for IBM of its 20-page memorandum, which allegedly was the combined effort of six attorneys and three subordinates in support of a motion for sanctions and a hearing.[2] This award is entitled to deference by a reviewing court and will only be overturned upon a finding of abuse of discretion. Stevens v. Lawyers Mut. Liability Ins. Co. of N.C., 789 F.2d 1056, 1060 (4th Cir.1986).
 
 II.
 
 37
 We find, from the evidence of record, that imposition of sanctions in this case was well within the discretion of the district judge, as such sanctions were based on specific, supportable factual findings, and we accordingly affirm based on the district court's opinion. We do, however, take exception to the amount awarded in favor of IBM on that part of the award in connection with the motion for a hearing on sanctions.
 
 
 38
 Both Rule 56(g) and Rule 11 of the Federal Rules of Civil Procedure provide a mechanism for imposing sanctions against offending parties consisting of "reasonable expenses" incurred in answering and challenging a false affidavit. Such reasonable expenses include attorney's fees. In determining the reasonableness of attorney's fees, this court is to consider the factors set forth in Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n. 28 (4th Cir.), cert. denied, 439 U.S. 934 (1978).[3]
 
 
 39
 The issue of sanctions, though not particularly savory, is not a thorny or complicated matter of law requiring extensive research, deliberation, or tactical maneuvering. And that is true of the motion for sanctions in this case. Accordingly, we find that the exertion of 312.6 hours of attorney and paralegal time preparing a 20-page memorandum in support of such a motion was an inefficient and excessive use of manpower for which the appellant should not now be required to pay. Here, the attorneys of record for IBM are all professionals of ability; the fees they command are high. We believe that with such recognition arises a duty of reasonable efficiency in attending to legal matters. Here the time expended does not befit the resulting product,[4] and the allowance of $30,000 for such efforts was an abuse of discretion.
 
 
 40
 We remand to the district court to reconsider its award for the preparation of a memorandum in support of the motion for sanctions and for a hearing on such motion. Except as to this item which is remanded to the district court for further consideration, the remainder of the decision of the district court is affirmed.
 
 
 41
 AFFIRMED IN PART AND REMANDED WITH INSTRUCTIONS.
 
 
 
 [1]
 Faltings and Corcoran were dismissed as plaintiffs. Such dismissal was affirmed by this court. See Faltings v. International Business Machines, No. 87-1123 (4th Cir. Aug. 4, 1988) (unpublished per curiam)
 
 
 [2]
 As to that portion of the award, the district court calculated as follows:
 Services Attorney Rate Hours Total
9/9/87 Memorandum in Saunders $150 34.50 $5,175.00
Support of Motion for Clary 150 6.75 1,012.50
Sanctions and Hearing Atkins 125 33.25 4,156.25
 Baron 125 2.50 312.50
 Fraser 125 70.25 8,781.25
 Sternberg 125 42.75 5,343.75
 Grimsley 45 59.50 2,677.50
 Hafey 45 25.00 1,125.00
 Wagner 45 38.00 1,710.00
 ----------
 $30,293.75
 
 
 [3]
 These include: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases
 
 
 [4]
 It is interesting to note that each page took an average of 15.6 attorney hours to prepare at a cost of $1,500 per page